1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9         FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11  NORA LAVERY-PETRASH,                    No.  2:11-cv-1520 GEB DAD PS

12          Plaintiff,

13      v.                                   FINDINGS AND RECOMMENDATIONS

14  SIERRA NEVADA MEMORIAL
    HOSPITAL, et al.,
15

16          Defendants.

17

18          This matter came before the court on March 20, 2015, for hearing of defendant Dignity

19  Health's (formerly known as Catholic Healthcare West and erroneously sued as Sierra Nevada

20  Memorial Hospital) motion for summary judgment.  Plaintiff Nora Lavery-Petrash appeared at

21  the hearing on her own behalf.  Attorney David Burkett appeared on behalf of the defendant.

22          Upon consideration of the arguments on file and at the hearing, and for the reasons set

23  forth below, the undersigned will recommend that defendant's motion for summary judgment be

24  granted.

25  /////

26  /////

27  /////

28  /////

                                          1

BACKGROUND

Plaintiff, then proceeding through counsel, commenced this action on March 2, 2011, by filing a complaint in the Nevada County Superior Court.  (Dkt. No. 1-2 at 1.[1])  Plaintiff's original complaint alleged four cause of action, including one for violation of Title VII of the Civil Rights Act of 1964.  On June 6, 2011, defendants Dignity Health, James Heard, David Witthaus, Arthur Dewson and Annalise O'Connor removed the action to this court.  (Dkt. No. 1 at 1-2.)

On June 10, 2011, defendants filed a motion to dismiss.  (Dkt. No. 8.)  The assigned District Judge granted defendants' motion on December 12, 2011, dismissed plaintiff's original complaint and granted plaintiff leave to file an amended complaint.  (Dkt. No. 23.)  Plaintiff filed her amended complaint on December 25, 2011.  (Dkt. No. 24.)

On January 12, 2012, defendants filed a motion to dismiss the amended complaint.  (Dkt. No. 27.)  On March 26, 2012, the assigned District Judge granted in part and denied in part defendants' motion to dismiss and granted plaintiff leave to file a second amended complaint. (Dkt. No. 37.)  Plaintiff filed her second amended complaint on April 5, 2012.  (Dkt. No. 39.)

On April 23, 2012, defendants filed a motion to dismiss plaintiff's second amended complaint.  (Dkt. No. 40.)  The assigned District Judge granted defendants' motion to dismiss the second amended complaint on September 5, 2012, and granted plaintiff leave to file a third amended complaint.  (Dkt. No. 50.)  Plaintiff filed her third amended complaint on September 16, 2012.  (Dkt. No. 52.)

On October 3, 2012, defendants filed a motion to dismiss plaintiff's third amended complaint.  (Dkt. No. 54.)  On May 28, 2013, the assigned District Judge dismissed the third amend complaint's causes of action alleging age-based employment discrimination, hostile work environment harassment, retaliation and negligence, but granted plaintiff leave to file a fourth amended complaint.[2]  (Dkt. No. 58.)  That same day the assigned District Judge issued an order

---

[1]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[2]  The assigned District Judge did not, however, dismiss the third amended complaint's sex-based discrimination claims against defendant Dignity Health.  (Dkt No. 58 at 5.)

1   finding that plaintiff was no longer represented by counsel eligible to practice in this court,

2   deeming plaintiff to be proceeding in this action *in propria persona* and referring the matter to the

3   undersigned Magistrate Judge pursuant to Local Rule 302(c)(21.)  (Dkt. No. 59.)

4          On June 12, 2013, plaintiff, now proceeding pro se, filed a fourth amended complaint.

5   (Dkt. No. 64.)  Therein, plaintiff alleges generally that while employed by defendant Dignity

6   Health she experienced discrimination, harassment and retaliation, in part because of her sex and

7   age.  On July 1, 2013, defendants again filed a motion to dismiss.[3]  (Dkt. No. 67.)  On January 29,

8   2014, the undersigned issued findings and recommendations, recommending that the individual

9   defendants be dismissed from this action and that the motion to dismiss be granted as to the fourth

10  amended complaint's hostile work environment and negligence claims, but denied as to plaintiff's

11  claims of age-based discrimination and retaliation.  (Dkt. No. 73.)  Those findings and

12  recommendations were adopted in full by the assigned District Judge on March 17, 2014.  (Dkt.

13  No. 75.)

14         Defendant Dignity Health, ("defendant"), filed an answer on April 7, 2014.  (Dkt. No. 76.)

15  On February 13, 2015, defendant filed the pending motion for summary judgment.  (Dkt. No. 85.)

16  Plaintiff filed her opposition on March 4, 2015.  (Dkt. No. 88.)  Defendant filed a reply on March

17  13, 2015.  (Dkt. No. 90.)

18                                          LEGAL STANDARDS

19         Summary judgment is appropriate when the moving party "shows that there is no genuine

20  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

21  Civ. P. 56(a).

22         Under summary judgment practice, the moving party "initially bears the burden of

23  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

24  627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

25  The moving party may accomplish this by "citing to particular parts of materials in the record,

26

27  [3]  Defendant's motion to dismiss expressly stated that it did "not challenge the sufficiency of
    Plaintiff's sex discrimination claim as asserted against DIGNITY HEALTH . . . ."  (Dkt. No. 65-1
28  at 4.)

                                                     3

1  including depositions, documents, electronically stored information, affidavits or declarations,

2  stipulations (including those made for purposes of the motion only), admission, interrogatory

3  answers, or other materials" or by showing that such materials "do not establish the absence or

4  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

5  support the fact." FED. R. CIV. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

6  of proof at trial, "the moving party need only prove that there is an absence of evidence to support

7  the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).

8  See also FED. R. CIV. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after

9  adequate time for discovery and upon motion, against a party who fails to make a showing

10 sufficient to establish the existence of an element essential to that party's case, and on which that

11 party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure

12 of proof concerning an essential element of the nonmoving party's case necessarily renders all

13 other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so

14 long as whatever is before the district court demonstrates that the standard for entry of summary

15 judgment . . . is satisfied." Id. at 323.

16     If the moving party meets its initial responsibility, the burden then shifts to the opposing

17 party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

18 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

19 existence of this factual dispute, the opposing party may not rely upon the allegations or denials

20 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

21 admissible discovery material, in support of its contention that the dispute exists.  See FED. R.

22 CIV. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

23 fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

24 governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

25 Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

26 genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

27 party.  See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

28 /////

4

1    In the endeavor to establish the existence of a factual dispute, the opposing party need not

2  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

3  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

4  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

5  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

6  Matsushita, 475 U.S. at 587 (citations omitted).

7    "In evaluating the evidence to determine whether there is a genuine issue of fact," the

8  court draws "all reasonable inferences supported by the evidence in favor of the non-moving

9  party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

10  the opposing party's obligation to produce a factual predicate from which the inference may be

11  drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

12  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

13  party "must do more than simply show that there is some metaphysical doubt as to the material

14  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

15  nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation

16  omitted).

17    In assessing a motion for summary judgment brought in the context of an employment

18  discrimination action such as this one, it is important to recognize that "California has adopted the

19  three-stage burden-shifting test established by the United States Supreme Court [in McDonnell

20  Douglas Corp. v. Green, 411 U.S. 792 (1973)] for trying claims of discrimination . . . ." Guz v.

21  Bechtel National, Inc., 24 Cal.4th 317, 354 (2000).

22    Under the three-part McDonnell Douglas test, the plaintiff bears the
   initial burden of establishing a prima facie case of employment
23    discrimination.  Once the plaintiff has done so, the burden shifts to
   the employer to articulate a legitimate, nondiscriminatory reason for
24    its actions.  If the employer articulates a legitimate reason, the
   plaintiff must raise a triable issue that the employer's proffered
25    reason is pretext for unlawful discrimination.  The ultimate burden
   of persuasion remains with the plaintiff.
26

27  Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011) (citation omitted).

28  /////

However, when the defendant employer has moved for summary judgment "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." Lawler v. Mountblanc North America, LLC, 704 F.3d 1235, 1242 (9th Cir. 2013) (quoting Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011)). "Thus, to prevail on summary judgment, the employer is required to show either that (1) plaintiff could not establish one of the elements of the . . . claim or (2) there was a legitimate, nondiscriminatory reason for [the adverse employment action]." Id. In proffering a legitimate, nondiscriminatory reason, the employer's burden "is one of production, not persuasion, thereby involving no credibility assessment." Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1147 (9th Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). If the employer meets its initial burden on summary judgment, the employee must then demonstrate either "that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." Lawler, 704 F.3d at 1242 (quoting Lucent Techs., Inc., 642 F.3d at 746 (quotation omitted) (omission in original).

## DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Defendant's statement of undisputed facts is supported by citations to various declarations and exhibits, as well as excerpts from plaintiff's deposition. Defendants' statement of undisputed facts establishes the following.

Plaintiff worked the graveyard shift at the Sierra Nevada Memorial Hospital, ("SNMH"), Laboratory Department, sometimes as a Phlebotomist and sometimes as a Laboratory Assistant. From October of 2007 to February 21, 2011, David Witthaus was the Laboratory Director and plaintiff's supervisor. In 2008 SNMH introduced Mobilab, an electronic device used to track blood draws and create labels for specimens. On June 25, 2008, Witthaus reiterated to plaintiff that the use of Mobilab was mandatory and confirmed the conversation in a memorandum to plaintiff's employee file. (Def.'s SUDF (Dkt. No. 85-6) 1-5.[4])

/////

---

[4] Citations here are to the specific numbered undisputed fact asserted.

In January of 2009, Witthaus received a complaint from Phlebotomist Rene MacNeil, who claimed that plaintiff, "again refused to help out with the morning [blood] draw for the past two days," and that plaintiff "remains unwilling to be a team player." On February 11, 2009, Witthaus again advised plaintiff to use Mobilab after learning that plaintiff had not been using it. That conversation was documented in a memorandum to plaintiff's employee file. (Def.'s SUDF (Dkt. No. 85-6) 5, 10.)

In July of 2009, plaintiff attended a meeting in her role as union steward with Witthaus, Nursing Supervisor Kathy Sheahan and co-worker Constance Goodwin. The purpose of the meeting was to investigate Goodwin's allegation that Phlebotomist Roy Gatlin intimidated her during a disagreement. Plaintiff claims that she was asked by Witthaus whether she ever witnessed any inappropriate conduct by Gatlin and that plaintiff told Witthaus that Gatlin had shown pornographic photographs to other co-workers. On July 22, 2009, Laboratory Trainer Kaye Holzworth complained to Witthaus that plaintiff was not following proper procedures for discarding blood specimen labels, even though Holzworth had reminded plaintiff of the proper procedure on several occasions. Witthaus sent a message to plaintiff that same day instructing plaintiff to follow Holzworth's directive. (Def.'s SUDF (Dkt. No. 85-6) 6-9, 11-12.)

On July 23, 2009, Witthaus received a letter from Phlebotomist Patricia Daniel, asking to change shifts so that she did not have to work with plaintiff because plaintiff did not follow instructions and was "manipulative and conniving." Daniel also informed Witthaus that plaintiff had stated that Witthaus "fucked himself" because there was a sexual harassment complaint pending against another employee. Daniel was reportedly not comfortable working with plaintiff and feared plaintiff would retaliate against her. On that same day, Witthaus received a complaint from Roy Gatlin, who claimed that plaintiff had a negative attitude and that Housekeeper Anita Hunter had informed Gatlin that plaintiff had made a derogatory comment about Phlebotomist Jessica Hoglund. Witthaus met with Hunter who reported that plaintiff had said that "Jessica [Hoglund] is a worthless piece of shit." Hunter also said that plaintiff regularly made negative comments about her co-workers and management, and verbally attacked other employees. (Def.'s SUDF (Dkt. No. 85-6) 13-15.)

7

1        In August of 2009, after conducting an investigation into plaintiff's behavior, Witthaus

2   issued plaintiff a Written Warning for failing to follow instructions on the proper handling of

3   labels, making negative statements about co-workers and management, and projecting a negative

4   attitude in the workplace.  Plaintiff was asked to improve her communication and attitude.  On

5   September 3, 2009, Patricia Daniel told Witthaus that plaintiff had been "following her around"

6   and accusing Daniel of being the person responsible for the complaints about plaintiff to

7   management.  On September 30, 2009, Daniel reported that plaintiff told her that the Union gave

8   plaintiff copies of the investigation notes that indicated Daniel was the person who complained

9   about plaintiff to management.  That same day, Witthaus sent a message to plaintiff on Dignity

10  Health's secure server stating that plaintiff had been warned that any retaliatory behavior would

11  not be tolerated and that she should keep her conversations professional.  (Def.'s SUDF (Dkt. No.

12  85-6) 16-20.)

13       In October of 2009, Phlebotomist Rene MacNeil told Witthaus that Emergency

14  Department staff told MacNeil that plaintiff was constantly complaining about other Laboratory

15  Department employees and hid her food at work because she was concerned someone was trying

16  to poison her.  On October 19, 2009, Daniel told Witthaus that plaintiff was still retaliating

17  against her by spreading inappropriate rumors about Daniel, including a rumor that Daniel was

18  taking behavior modifying medications.  On October 23, 2009, Nurse Corrine Lovendahl told

19  Witthaus that plaintiff had a negative attitude which was getting worse.  On November 5, 2009,

20  Anita Hunter again reported that plaintiff had a negative attitude and spoke poorly about her

21  colleagues.  Hunter told Witthaus that she had witnessed plaintiff tell Patricia Daniel that plaintiff

22  did not like the other Phlebotomists.  (Def.'s SUDF (Dkt. No. 85-6) 21-25.)

23       On May 13, 2010, Phlebotomist Cheryl Ann Blank complained to Witthaus that plaintiff

24  called in sick every time plaintiff was scheduled to work with Blank.  That same day Witthaus

25  issued an Anecdotal Note to plaintiff for attendance issues pursuant to the terms and conditions of

26  the Collective Bargaining Agreement between SNMH and the Teamsters Union Local No. 150.

27  Plaintiff was to sign and return the Anecdotal Note by May 25, 2010, but did not do so until June

28  8, 2010.  On May 17, 2010, Witthaus issued a performance evaluation regarding plaintiff, stating

1    that although plaintiff was accurate in her work and completed tasks assigned, her attitude and

2    communication did not meet Dignity Health's standards.  Plaintiff was given 90 days to begin

3    showing improvement in those areas.  (Def.'s SUDF (Dkt. No. 85-6) 25-31.)

4         On May 26, 2010, Clinical Laboratory Supervisor Susan Sparks told Witthaus that

5    plaintiff became angry when Phlebotomist Cheryl Ann Blank had to go home because of

6    mandatory furloughs.  Plaintiff failed to draw blood before going on break and then left, leaving

7    the graveyard shift without a Phlebotomist.  That same day Blank complained that plaintiff stated

8    that Witthaus "just doesn't understand" how the night shift works and that plaintiff was not

9    stocking or bleaching counters as she should.  On June 4, 2010, Clinical Lab Scientist Bob

10   Franklin told Witthaus that he was concerned about plaintiff's negative attitude and the comments

11   she was making.  On June 16, 2010, Phlebotomist Cindy Sassman complained to Witthaus that

12   plaintiff confronted Sassman about complaints Sassman had made to management concerning

13   plaintiff's behavior.  On June 21, 2010, Franklin complained to Witthaus that plaintiff had also

14   confronted him about earlier complaints to management concerning plaintiff's behavior.  On June

15   28, 2010 Jessica Hoglund complained to Witthaus that plaintiff was rude to Hoglund during a

16   conversation.  On July 5, 2010, Phlebotomist Rene MacNeil reported to Witthaus that plaintiff

17   followed MacNeil to her car and accused her of complaining to management about plaintiff's

18   behavior.  (Def.'s SUDF (Dkt. No. 85-6) 26-39.)

19        In July of 2010, an employee told Witthaus that plaintiff still was not consistently using

20   Mobilab to track blood draws.  Witthaus investigated and confirmed that there were several days

21   plaintiff did not use Mobilab even though other employees used it without encountering any

22   problems.  Witthaus issued plaintiff a Written Warning on July 26, 2010.  On November 22,

23   2010, Witthaus was scheduled to meet with plaintiff to discuss her May 2010 performance

24   evaluation.  Plaintiff failed to appear at the meeting even though she was clocked-in for work.  As

25   a result, Witthaus issued plaintiff a Written Warning for her failure to attend.  On December 9,

26   2010, Witthaus and plaintiff met to discuss her performance and Witthaus issued an updated

27   evaluation, stating that plaintiff still needed to focus on communicating in a calm and professional

28   /////

1   manner.  Plaintiff did not sign that evaluation until February 7, 2011.  (Def.'s SUDF (Dkt. No.

2   85-6) 40-47.)

3         On December 22, 2010, SNMH posted internally an opening for the position of

4   Laboratory Supervisor.  Witthaus was responsible for hiring the Laboratory Supervisor.  Plaintiff,

5   who was 57 years old at that time, applied for the position along with eight other applicants.

6   Witthaus did not interview plaintiff for the position because of her long history of being the

7   subject of complaints from her co-workers, and instead interviewed Cheryl Ann Blank and

8   Jessica Hoglund.  Witthaus selected Hoglund for the position because of her excellent

9   interpersonal skills and range of experience.  The choice was approved by Vice President of

10  Professional Services James Hear and SNMH CEO Catherine Medeiros.  Hoglund was 56 years

11  old at the time she was selected.  (Def.'s SUDF (Dkt. No. 85-6) 48-53.)

12  PLAINTIFF'S OPPOSITION

13        Plaintiff's opposition to defendant's motion for summary judgment partially complies

14  with Local Rule 260(b).  In this regard, in opposing the grant of summary judgment in favor of

15  defendant, plaintiff has reproduced each fact enumerated in defendant's statement of undisputed

16  facts and expressly admitted or denied each fact.  Plaintiff, however, has not cited to evidence in

17  support of each of her denials.  (Pl.'s SUDF (Dkt. No. 88) at 17-26.)  Moreover, to the extent

18  plaintiff denies a fact asserted by defendant, plaintiff's argument is essentially that "the evidence

19  presented to support [defendant's SUDF] is based solely on the hearsay statement of David

20  Witthaus."[5]  (Pl.'s SUDF (Dkt. No. 88) at 30-38.)

21  _____

22  [5]  "At summary judgment, a party does not necessarily have to produce evidence in a form that
    would be admissible at trial."  Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1019 (9th Cir.

23  2011) (citing Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001) (internal
    quotations omitted)).  The focus is instead on the admissibility of the evidence's contents, not its

24  form.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).  "Objections to evidence on
    the ground that the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or

25  constitutes an improper legal conclusion are all duplicative of the summary judgment standard
    itself."  Century 21 Real Estate LLC v. All Prof'l Realty, Inc., 889 F.Supp.2d 1198, 1215 (E.D.

26  Cal. 2012) (citing Burch v. Regents of the Univ. of Cal., 433 F.Supp.2d 1110, 1119-20 (E.D. Cal.

27  2006)).  "Even if the non-moving party's evidence is presented in a form that is currently
    inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the

28  moving party's objections could be cured at trial."  Id.

10

1    Nonetheless, in light of plaintiff's pro se status, the court has reviewed plaintiff's filing in

2    an effort to discern whether she actually denies any material fact asserted in defendant's

3    statement of undisputed facts and, if so, what evidence plaintiff has offered that may demonstrate

4    the existence of a disputed issue of material fact with respect to any of her claims thereby

5    defeating the pending motion for summary judgment.

6         In her opposition, plaintiff argues that "almost immediately after" she attended the July

7    2009 meeting with Constance Goodwin in her role as union steward, "[s]he became the victim of

8    discrimination, harassment and retaliation."  (Pl.'s Opp.'n (Dkt. No. 88) at 5.)  Plaintiff asserts

9    that for the first seven years of her employment she received positive performance evaluations but

10   that once Witthaus commenced his employment, plaintiff's performance evaluation worsened

11   until Witthaus left, at which time "her performance evaluations resumed their positive position

12   and remain so to date."  (Id.)

13                                        ANALYSIS

14   **I.    Age Based Discrimination**

15        The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an

16   employer[6]

17        (1) to fail or refuse to hire or to discharge any individual or otherwise
18        discriminate against any individual with respect to his compensation, terms,
     conditions, or privileges of employment, because of such individual's age;

19
20        (2) to limit, segregate, or classify his employees in any way which would
     deprive or tend to deprive any individual of employment opportunities
21        or otherwise adversely affect his status as an employee, because of such
     individual's age . . . .

22

23   [6]  Defendant argues, correctly, that plaintiff's fourth amended complaint's claim of age based
     discrimination specifically refers to the California Fair Employment and Housing Act ("FEHA")
24   and Title VII despite the fact that Title VII does not apply to age based discrimination.  However,
     "[t]he label that a plaintiff places on [her] pleadings . . .does not determine the nature of [her]
25   cause of action."  Rains v. Criterion Systems, Inc., 80 F.3d 339, 343 n.2 (9th Cir. 1996).  See also
     Newhouse v. Aurora Bank FSB, 915 F.Supp.2d 1159, 1168 (E.D. Cal. 2013) (The "court . . .
26   analyzes the underlying conduct which forms the basis of plaintiffs' state law claims and not the
     label of the claims themselves").  In this regard, as noted in the undersigned's January 28, 2014
27   findings and recommendations, plaintiff's fourth amended complaint stated a claim for age-based
     discrimination.  (Dkt. No. 73 at 5.)

28

1  29 U.S.C. § 623(a)(1)-(2).

2          "To establish a prima facie case of failure-to-promote under the ADEA, the plaintiff must

3  demonstrate 'that he or she was (1) at least forty years old, (2) qualified for the position for which

4  an application was submitted, (3) denied the position, and (4) the promotion was given to a

5  substantially younger person.'" Morgan v. Napolitano, 988 F.Supp.2d 1162, 1181 (E.D. Cal.

6  2013) (quoting Shelley v. Geren, 666 F.3d 599, 608 (9th Cir. 2012)).  Claims of age

7  discrimination under California's Fair Employment and Housing Act ("FEHA"), CAL. GOV.'S

8  CODE § 12940, are subject to the same standard.  See Guz v. Bechtel Nat. Inc., 24 Cal.4th 317,

9  355 (Cal. 2000) ("Generally, the plaintiff must provide evidence that (1) he was a member of a

10  protected class, (2) he was qualified for the position he sought or was performing competently in

11  the position he held, (3) he suffered an adverse employment action, such as termination,

12  demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory

13  motive.").

14          In her fourth amended complaint, plaintiff alleges that at the age of 58 she applied for the

15  position of Laboratory Supervisor, a position she believed she was qualified for, was denied an

16  opportunity to interview for the position and that the position was eventually filled by Jennifer

17  Hoglund, a younger and less experienced employee.[7]  (Fourth Am. Compl. (Dkt. No. 64) at 2-3.)

18  Defendant, however, has proffered evidence, specifically a declaration from Jennifer Hoglund,

19  establishing that Hoglund was 56 years old at the time she was hired.  (Hogl. Decl. (Dkt. No. 85-

20  4) at 1.)  Plaintiff has offered nothing to contradict defendant's evidence with respect to

21  Hoglund's age at the time she was hired for the position in question.

22          Thus, the undisputed evidence establishes that the age difference between plaintiff and

23  Hoglund was only two years.  Hoglund, therefore, was not substantially younger than plaintiff

24  when she was selected for the Laboratory Supervisor position.  See Diaz v. Eagle Produce Ltd.

25  Partnership, 521 F.3d 1201, 1209 (9th Cir. 2008) ("That the average age of the workers hired

26

27  [7]  It appears from plaintiff's date of birth that plaintiff was actually 57 years old when Hoglund
    was selected for the Laboratory Supervisor position.  (Def.'s SUDF (Dkt. No. 85-6) 50) (citing
28  plaintiff's deposition wherein plaintiff provides her date of birth); (Hoglund Decl. (85-4) at 1.)

1  during the two-year period is approximately nine and a half years younger than the average age of

2  those laid off - 38.75 versus 48.4 years - also fails to justify an inference of age discrimination.

3  The disparity is not so stark as to suggest bias rather than pure chance."); Grosjean v. First Energy

4  Corp., 349 F.3d 332, 338 (6th Cir. 2003) ("The overwhelming body of cases in most circuits has

5  held that age differences of less than ten years are not significant enough to make out the fourth

6  part of the age discrimination prima facie case."); Munoz v. St. Mary-Corwin Hosp., 221 F.3d

7  1160, 1166 (10th Cir. 2000) ("we agree with the district court that because plaintiff's replacement

8  was only two years his junior – an obviously insignificant difference – the necessary inference of

9  discrimination was precluded, and he failed to establish his prima facie case"); Holtzclaw v.

10  Certainteed Corp., 795 F.Supp.2d 996, 1011 (E.D. Cal. 2011) ("Stofle . . . was only three years

11  younger than Plaintiff, thus not significantly younger").

12       Plaintiff's fourth amended complaint also alleges, in a vague and conclusory manner, that

13  Arthur Dewsen discriminated against plaintiff based on her age.  (Fourth Am. Compl. (Dkt. No.

14  64) at 3.)  Similarly, in her opposition to the pending motion for summary judgment, plaintiff

15  argues that "Arthur Dewsen refused to allow Plaintiff to do any tasks other than stocking, wiping

16  the counters, and putting reagents on the analyzer," but permitted "other employees" who were

17  younger than plaintiff "to do many other tasks."  (Pl.'s Opp.'n (Dkt. No. 88) at 8.)  However,

18  plaintiff has failed to present any further argument or evidence in support of these vague and

19  conclusory allegations.[8]

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26

27  [8]  To the extent plaintiff is referring to her argument that Arthur Dewsen did not allow her to plate
    and culture specimens but allowed Mike Olsen to perform those tasks, those allegations are
28  addressed below.

13

1    Accordingly, the undersigned finds that plaintiff has failed to establish a prima facie case

2    of age discrimination.[9]  Defendant's motion for summary judgment should, therefore, be granted

3    as to the fourth amended complaint's claim for age based discrimination.

4    **II.    Sex Based Discrimination**

5    "Both Title VII and FEHA prohibit employment discrimination based upon sex."  Ortiz v.

6    Georgia Pacific, 973 F.Supp.2d 1162, 1172 (E.D. Cal. 2013).  Title VII makes it unlawful for

7    employers:

8        (1) to fail or refuse to hire or to discharge any individual, or
     otherwise to discriminate against any individual with respect to his
9    compensation, terms, conditions, or privileges of employment,
     because of such individual's race, color, religion, sex, or national
10   origin; or (2) to limit, segregate, or classify his employees or
     applicants for employment in any way which would deprive or tend
11   to deprive any individual of employment opportunities or otherwise
     adversely affect his status as an employee, because of such
12   individual's race, color, religion, sex, or national origin.

13   42 U.S.C. § 2000e–2(a)(1), (2).  The same standard for proving intentional discrimination under

14   Title VII applies to FEHA discrimination claims.  Los Angeles Cnty. Dep't of Parks & Recreation

15   v. Civil Serv. Com., 8 Cal.App.4th 273, 280 (1992).

16   A plaintiff "may establish a prima facie case of discrimination under the McDonnell

17   Douglas framework by showing that:  '(1) [s]he is a member of a protected class; (2) [s]he was

18   qualified for [her] position; (3) [s]he experienced an adverse employment action; and (4) similarly

19   situated individuals outside [her] protected class were treated more favorably, or other

20   circumstances surrounding the adverse employment action give rise to an inference of

21   /////

---

22   [9]  Even if plaintiff had established a prima facie case of age discrimination, she has failed to offer

23   any evidence that defendant's proffered legitimate nondiscriminatory reason for failing to
     interview plaintiff for the Laboratory Supervisor position, i.e., that plaintiff had a long history of

24   complaints from her co-workers regarding her lack of interpersonal skills, was pretextual.  See
     Ortega v. Regents of University of California, No. C 11-4031 PSG, 2012 WL 5988638, at *5

25   (N.D. Cal. Nov. 29, 2012) ("good interpersonal and communication skills may be valid,
     nondiscriminatory reasons for hiring or promotion"); Kraus v. Presidio Trust Facilities

26   Division/Residential Management Branch, 704 F.Supp.2d 859, 866-67 (N.D. Cal. 2010)

27   ("Plaintiff has failed to demonstrate that Mr. Blean's reasons behind his informal evaluation of
     her performance were pretextual, and therefore summary judgment should be granted for

28   Defendant as to this claim.").

14

1   discrimination.'"[10]  Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 847 (9th Cir.

2   2004) (quoting Peterson v. Hewlett-Packard Co., 358 F.3d 599, 604 (9th Cir. 2004)).

3         Here, plaintiff's fourth amended complaint alleges that Arthur Dewsen discriminated

4   against plaintiff based on her sex by not allowing plaintiff to "plate the urines and/or conduct

5   cultures," while allowing "male lab technicians such as Mike Olsen" to perform those same

6   duties.  (Fourth Am. Compl. (Dkt. No. 64) at 4.)  In her opposition to the pending motion for

7   summary judgment, plaintiff argues, without citation to any evidentiary support, that Dewsen

8   "was charged with training all of the graveyard laboratory employees on how to streak specimens

9   for testing, commonly referred to as plating urines and cultures" and instead 'left that sole

10  responsibility to Mr. Olson."  (Pl.'s Opp.'n (Dkt. No. 88) at 37.)  According to plaintiff, at the

11  time in question, all graveyard laboratory employees were women except Michael Olson and

12  "Dewsen refused to train any of the other graveyard lab employees, and left that sole

13  responsibility to Mr. Olson."  (Id.)[11]

14        In moving for summary judgment in their favor, however, defendant has provided

15  evidence in the form of a sworn declaration from Dewsen stating that Laboratory Assistants and

16  Phlebotomists typically were not allowed to perform the task of "plating urines and cultures."

17  (Dewsen Decl. (Dkt. No. 85-3) at 2.)  An exception was made for Laboratory Assistant Michael

18  Olson due to Olson's "considerable amount of prior experience performing those tasks."  (Id.)

19  Defendant's evidence establishes that Dewsen "was not aware that Plaintiff had any prior

20  experience plating urines or cultures."  (Id.)

21        On summary judgment defendant has produced evidence of a legitimate,

22  nondiscriminatory reason for the additional tasks Olson was allowed to perform.  See Texas Dept.

23
_____

24  [10]  Defendant does not dispute that plaintiff is a member of a protected class or that she was
    qualified for her position.  (Def.'s MSJ (Dkt. No. 85-1) at 18.)

25  [11]  It is certainly questionable whether the assignment of such tasks to Olson instead of to plaintiff

26  and other female employees is actionable.  See Brooks v. City of San Mateo, 229 F.3d 917, 928
    (9th Cir. 2000) (Recognizing that the Ninth Circuit has held that declining to hold a job open for

27  an employee or "badmouthing" an employee outside the job reference context do not constitute
    adverse employment actions.) The undersigned has nonetheless assumed that it is for purposes of

28  the analysis set forth above.

1    of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981) ("the employer has discretion to

2    choose among equally qualified candidates, provided the decision is not based upon unlawful

3    criteria"); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1048-49 (5th Cir. 1996) (recognizing that

4    evidence of more experience in a particular position is a legitimate, nondiscriminatory reason for

5    a pay differential); Fernandez v. Wynn Oil Co., 653 F.2d 1273, 1276 (9th Cir. 1981) ("employer's

6    decision may be justified by the hired employee's superior qualifications"); Wilson v. Dana

7    Corp., 210 F.Supp.2d 867, 885 (W.D. Ky. 2002) ("Thomas has established a prima facie case

8    regarding Dana's decisions to not name him to these positions, but Dana has likewise satisfied its

9    burden of articulating legitimate nondiscriminatory reasons for its actions.  According to Dana,

10   the individuals selected were more experienced and better qualified, and Dana had concerns about

11   Thomas' leadership abilities and work ethic."); Reed v. Connecticut, Dept. of Transp., 161

12   F.Supp.2d 73, 81 (D. Conn. 2001) ("the DOT has proffered legitimate, nondiscriminatory reasons

13   why Reed was not promoted to the director position.  Kilbon stated that the person appointed

14   instead of Reed, DiCioccio, had more experience in contract compliance than Reed").

15           Because defendant has articulated a legitimate, nondiscriminatory reason for the

16   challenged action, plaintiff must "raise a triable issue of material fact as to whether the

17   defendant's proffered reasons . . . are mere pretext for unlawful discrimination."  Hawn v.

18   Executive Jet Management, Inc., 615 F.3d 1151, 1155-56 (9th Cir. 2010).  See also Noyes v.

19   Kelly Services, 488 F.3d 1163, 1168 (9th Cir. 2007) ("Should the defendant carry its burden, the

20   burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered

21   reason was a pretext for unlawful discrimination.").  "'[A] plaintiff can prove pretext in two

22   ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of

23   credence because it is internally inconsistent or otherwise not believable, or (2) directly, by

24   showing that unlawful discrimination more likely motivated the employer.'"  Noyes, 488 F.3d at

25   1170 (quoting Chuang v. University of California Davis, Bd. Of Trustees, 225 F.3d 1115, 1127

26   (9th Cir. 2000).  Direct evidence is evidence "which, if believed, proves the fact [of

27   discriminatory animus] without inference or presumption."  Godwin v. Hunt Wesson, Inc., 150

28   F.3d 1217, 1221 (9th Cir. 1998) (quoting Davis v. Chevron, U.S.A., Inc., 14 F.3d 1082, 1085 (5th

1    Cir. 1994)) (alteration in original).  Direct evidence typically consists of clearly sexist, racist, or

2    similarly discriminatory statements or actions by the employer.  See, e.g., Godwin, 150 F.3d at

3    1221 (supervisor stated he "did not want to deal with [a] female"); Cordova v. State Farm Ins.,

4    124 F.3d 1145, 1149 (9th Cir. 1997) (alleged derogatory comments constitute direct evidence).

5    "Where evidence of pretext is circumstantial, rather than direct, the plaintiff must produce

6    'specific' and 'substantial' facts to create a triable issue of pretext."  Earl v. Nielsen Media

7    Research, Inc., 658 F.3d 1108, 1113 (9th Cir. 2011) (quoting Godwin, 150 F.3d at 1222).  "[T]hat

8    requirement is tempered by our observation that, in the context of Title VII claims, the burden on

9    plaintiffs to raise a triable issue of fact as to pretext is 'hardly an onerous one.'"  Noyes, 488 F.3d

10   at 1170 (quoting Payne v. Norwest Corp., 113 F.3d 1079, 1080 (9th Cir. 1997)).  Nonetheless, a

11   "plaintiff cannot create a genuine issue of pretext to survive a motion for summary judgment by

12   relying solely on unsupported speculations and allegations of discriminatory intent."  Crawford v.

13   MCI Worldcom Communications, Inc., 167 F.Supp.2d 1128, 1135 (S.D. Cal. 2001). Moreover,

14   "[m]erely denying the credibility of the employer's proffered reasons is insufficient to withstand

15   summary judgment."  Munoz v. Mabus, 630 F.3d 856, 865 (9th Cir. 2010).

16          Here, plaintiff has not come forward with any evidence to challenge defendant's proffered

17   legitimate, nondiscriminatory reason for the challenged actions.  Indeed, plaintiff concedes that

18   defendant's characterization of the situation is accurate.  Specifically, plaintiff testified at her

19   deposition that Michael Olson did, in fact, have more education and knowledge with respect to

20   the tasks in question than did plaintiff.  In this regard, plaintiff testified that:

21                 Michael Olson has degrees up the ying-yang.  I think he's two
                   courses behind being a physician assistant from years ago, so he has
22                 a massive amount of knowledge on the functions of the back lab,
                   which is the analyzation (sic), the cultures, where I do not have the
23                 degrees to know that.

24   (Pl.'s Depo (Dkt. No. 85-7) at 15-16.)  Plaintiff also testified that Dewsen never made any

25   comments about plaintiff's gender.  (Id. at 18.)

26          Assuming without deciding that plaintiff had stated a prima facie case of sex based

27   discrimination, defendant has come forward on summary judgment with evidence of a legitimate,

28   /////

                                                    17

1    nondiscriminatory reason for the allegedly adverse employment action.  Plaintiff has failed to

2    respond by raising a triable issue that defendant's proffered reason is pretextual.

3           Accordingly, the undersigned finds that defendant's motion for summary judgment should

4    be granted as to the fourth amended complaint's claim for sex based discrimination.

5    **III.**    **Retaliation**

6           A plaintiff may establish a prima facie case of retaliation under Title VII, the ADEA or

7    the FEHA by showing that (1) she engaged in a protected activity (i.e., that she protested or

8    otherwise opposed unlawful employment discrimination directed against a protected employee),

9    (2) the employer subjected her to an adverse employment decision, and (3) there was a causal link

10   between the protected activity and the employer's action.  Univ. of Texas S.W. Med. Ctr. v.

11   Nassar, — U.S. —, —, 133 S. Ct. 2517, 2534 (2013) ("a plaintiff making a retaliation claim

12   under [Title VII] must establish that his or her protected activity was a but-for cause of the

13   alleged adverse action by the employer"); Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir.

14   2007) (same); Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 506 (9th

15   Cir. 2000) (same); Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1042 (2005).  "It is not

16   necessary, however, that the employment practice actually be unlawful; opposition clause

17   protection will be accorded 'whenever the opposition is based on a 'reasonable belief' that the

18   employer has engaged in an unlawful employment practice.'"  Moyo v. Gomez, 40 F.3d 982, 984

19   (9th Cir. 1994) (quoting EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir. 1983)).

20          In her fourth amended complaint plaintiff alleges that she was retaliated against in the

21   following ways:  (1) her "receipt of a written warning after an investigation meeting in July 2010,

22   regarding … inability to use the Mobil Lab machine";  (2) "David Whitthaus, providing a list . . .

23   in mid-September, 2010, containing the names of several of her co-workers and their alleged

24   comments about [plaintiff],";  (3) being subjected "to a 90 day performance re-evaluation,"; and

25   /////

26   /////

27   /////

28   /////

18

1    (4) by receiving a negative performance evaluation in December of 2010.[12]  (Fourth Am. Compl.

2    (Dkt. No. 64) at 8-9.)  The fourth amended complaint also alleges that defendant retaliated against

3    plaintiff by denying her an opportunity to interview for the Laboratory Supervisor position.  (Id.

4    at 3.)

5           As indicated by defendant's statement of undisputed facts addressed above, defendant has

6    offered evidence on summary judgment establishing that beginning in January of 2009, plaintiff's

7    supervisor, David Witthaus, began receiving complaints from her co-workers about plaintiff's

8    behavior and attitude.  In response to these co-worker complaints, Witthaus conducted an

9    investigation and thereafter issued plaintiff a written warning.  Witthaus, nonetheless, continued

10   to receive complaints about plaintiff from her co-workers.  Thereafter, plaintiff was issued an

11   Anecdotal Note for excessive absences.

12          On May 17, 2010, Witthaus conducted plaintiff's performance evaluation and gave

13   plaintiff 90 days to show improvement in her ability to communicate and in her working

14   relationships.  Nevertheless, Witthaus continued to receive complaints about plaintiff from her

15   fellow co-workers.  Moreover, plaintiff's repeated failure to use Mobilab resulted in the receipt of

16   a Written Warning on July 26, 2010.  Plaintiff received another Written Warning on November

17   22, 2010, for her failure to attend a meeting to discuss her May 17, 2010 performance evaluation.

18   On December 22, 2010, defendant posted an opening for a Laboratory Supervisor position, but in

19   light of the history of complaints about her from plaintiff's co-workers, Witthaus decided not to

20   interview plaintiff for that position which was eventually filled by a woman who was not

21   substantially younger than plaintiff.

22          In light of this undisputed evidence, assuming without deciding that plaintiff had

23   established a prima facie claim for retaliation, the undersigned concludes that defendant has

24   produced evidence of legitimate nondiscriminatory reasons for plaintiff's treatment.  See Stegall

---

25   [12]  The fourth amended complaint also contains an allegation that plaintiff "was threatened of

26   (sic) insubordination by my supervisor . . . and then written up in July 2009 . . . ."  (Fourth Am.
     Compl. (Dkt. No. 64) at 5.)  Plaintiff, however, has failed to explain this allegation or offer any

27   evidence in support of this vague and conclusory allegation regarding a threat of insubordination.
     Moreover, plaintiff states in her opposition that "[a]ll of the discrimination and retaliation began

28   after Plaintiff attended the meeting of July 2009 . . . ."  (Pl.'s Opp. (Dkt. No. 88) at 10.)

1  v. Citadel Broadcasting Co., 350 F.3d 1061, 1075 (9th Cir. 2003) ("Marathon states that it

2  terminated Stegall because of a perception among Marathon management that Stegall did not

3  place a priority on maintaining strong working relationships and thus displayed a poor attitude

4  toward her job and her co-workers.  The reasons articulated by Marathon satisfy Marathon's

5  burden of production to articulate legitimate nondiscriminatory reasons for terminating Stegall's

6  employment."); Unt v. Aerospace Corp., 765 F.2d 1440, 1446 (9th Cir. 1985) ("An employee is

7  not protected by Title VII when he violates legitimate company rules, knowingly disobeys

8  company orders, disrupts the work environment of his employer, or willfully interferes with the

9  attainment of the employer's goals."); Day v. Sears Holdings Corp., 930 F.Supp.2d 1146, 1170

10  (C.D. Cal. 2013) ("violation of company policies is a legitimate, nondiscriminatory reason for

11  terminating an employee").

12         Because defendant has come forward with evidence articulating legitimate,

13  nondiscriminatory reasons for the challenged actions, plaintiff must "raise a triable issue of

14  material fact as to whether the defendant's proffered reasons . . . are mere pretext for unlawful

15  discrimination."  Hawn, 615 F.3d at 1155-56.  Accordingly, in order to survive summary

16  judgment plaintiff must come forward with specific and substantial evidence that defendant's

17  proffered reasons are actually a pretext.  See Aragon v. Republic Silver State Disposal Inc., 292

18  F.3d 654, 659 (9th Cir. 2002) ("evidence must be both specific and substantial to overcome the

19  legitimate reasons put forth by Republic").

20         Here, plaintiff has failed to offer any evidence that could demonstrate that defendant's

21  articulated reasons are pretextual.  In opposing defendant's evidence, plaintiff argues merely that

22  much of the evidence defendant has offered is "hearsay" and refers generally to plaintiff's

23  attached declaration which also argues that defendant's evidence consists of the "hearsay

24  statement(s) of David Witthaus."[13]  (Pl.'s Opp.'n (Dkt. No. 88) at 21-22, 29-40.)  Moreover, the

25  evidence plaintiff offers in opposition to defendant's motion consists essentially of letters written

26  ———————————————

27  [13]  Defendant has submitted not only the declarations referenced above, as well as the
    contemporaneous communications from Witthaus to plaintiff reflecting the complaints discussed
    above, but also some of the letters from plaintiff's co-workers to Witthaus complaining about

28  plaintiff's attitude and behavior.  (Def.'s MSJ (Dkt. No. 85-7) at 47, 51.)

1   by some of plaintiff's co-workers attesting to her good behavior and plaintiff's handwritten notes

2   regarding various incidents.  (Pl.'s Opp.'n (Dkt. No. 88) at 40-41.)  That evidence, however, fails

3   to contradict the significant evidence offered by defendant.[14]  See Bradley v. Harcourt, Brace and

4   Co., 104 F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal judgments of her

5   competence alone do not raise a genuine issue of material fact").

6          Plaintiff also argues that she "may establish a causal link between the alleged protected

7   activity and the alleged adverse action by circumstantial evidence, including . . . the proximity in

8   time between the protected action and the adverse employment act."  (Pl.'s Opp.'n (Dkt. No. 88)

9   at 10.)  "Temporal proximity between protected activity and an adverse employment action can

10  by itself constitute sufficient circumstantial evidence of retaliation in some cases."[15]  Bell v.

11  Clackamas County, 341 F.3d 858, 865 (9th Cir. 2003).  See also Dawson v. Entek Intern., 630

12  F.3d 928, 937 (9th Cir. 2011) ("In some cases, temporal proximity can by itself constitute

13  sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the

14  showing of pretext.").

15         Defendant, however, has produced considerable evidence of plaintiff's poor work

16  performance and behavioral problems.  Specifically, defendant has produced evidence that

17  plaintiff repeatedly refused to use the Mobilab device despite its using being mandatory,

---

18  [14]  Moreover, not all of the letters offered by plaintiff are entirely supportive of her arguments.  In

19  this regard, although largely positive, a letter dated September 10, 2009, from Michael Olson

20  notes that "because of [plaintiff's] frustration with how things are handled . . . people may
     interpret her words as profanity," that plaintiff "does speak of co-workers . . . but she is tactful

21  and her comments are predominantly constructive," and that although "foul language and
     speaking negatively about co-workers is an everyday occurrence . . . . [plaintiff] participates far

22  less than the average lab employee in these types of behaviors."  (Pl.'s Opp.'n (Dkt. No. 88) at
     55-58.)

23
    [15]  "At least one district court within the Ninth Circuit has concluded that following the Supreme

24  Court's decision in Nassar evidence of knowledge and proximity in time alone is insufficient to
     create a disputed issue of fact on causation with respect to a retaliation claim."  Ellorin v. Applied

25  Finishing, Inc., 996 F.Supp.2d 1070, 1091 (W.D. Wash. 2014).  See also Williams v. Serra
     Chevrolet Automotive, LLC, 4 F.Supp.3d 865, 879 (E.D. Mich. 2014) ("applying the teachings of

26  Nassar and Gross here, temporal proximity alone is not enough to allow a reasonable inference of
     'but-for' causation"); Dall v. St. Catherine of Siena Medical Center, 966 F.Supp.2d 167, 195

27  (E.D. N.Y. 2013) ("While temporal proximity alone may still be sufficient at the prima facie
     stage, it is not sufficient at the pretext stage.").

28

1    (Witthaus Decl. (Dkt. No. 85-5) at 7-8), and that plaintiff's co-workers frequently complained

2    about plaintiff's poor behavior and attitude.  (Whitthaus Decl. (Dkt. No. 85-5) at 1-10; Ex. F.

3    (Dkt. No. 85-7) at 47; Ex. H (Dkt. No. 85-7) at 51.)

4        "[T]iming alone, accompanied by evidence of Plaintiff's behavior problems, coupled with

5    a complete lack of evidence of retaliatory intent, is neither specific nor substantial circumstantial

6    evidence." Davenport v. Board of Trustees of State Center Community College Dist., 654

7    F.Supp.2d 1073, 1102 (E.D. Cal. 2009).  See also Mitchell v. Superior Court of Cal. County of

8    San Mateo, 312 Fed. Appx. 893, 894 (9th Cir. 2009) (affirming summary judgment where

9    plaintiff "has not offered any evidence other than the 'timing' to rebut what otherwise appears to

10    be an effort by an employer to confront ballooning discoveries regarding an employee's

11    inappropriate behavior")[16]; Brooks v. Capistrano Unified School Dist., 1 F.Supp.3d 1029, 1038

12    (C.D. Cal. 2014) ("Here, mere temporal proximity, with nothing more, is insufficient to establish

13    pretext.").

14        Accordingly, for all of the reasons set forth above, the undersigned finds that defendant's

15    motion for summary judgment should also be granted as to the fourth amended complaint's

16    retaliation claim.

17                    CONCLUSION

18        Given the evidence presented by the parties on summary judgment, there does not appear

19    to be even a scintilla of evidence that defendant violated plaintiff's rights under Title VII, the

20    ADEA or the FEHA.  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A

21    scintilla of evidence or evidence that is merely colorable or not significantly probative does not

22    present a genuine issue of material fact" precluding summary judgment); Summers v. A. Teichert

23    & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) ("a mere scintilla of evidence will not be

24    sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving

25    party must introduce some significant probative evidence tending to support the complaint").

26    /////

27

28

---

[16] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

1    In the absence of any evidence of a disputed issue of material fact regarding plaintiff's

2  claims, the court finds that defendant is entitled to summary judgment in its favor on all of

3  plaintiff's claims.  After adequate time for discovery, plaintiff has failed to make a showing

4  sufficient to establish the existence of any disputed issue of fact regarding elements essential to

5  her claims and on which she would bear the burden of proof at trial.

6    Accordingly, IT IS HEREBY RECOMMENDED that:

7    1.  Defendant's February 13, 2015 motion for summary judgment (Dkt. No. 85) be

8  granted; and

9    2.  This action be closed.

10    These findings and recommendations are submitted to the United States District Judge

11  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12  after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within seven days after service of the objections.  The parties are advised

16  that failure to file objections within the specified time may waive the right to appeal the District

17  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18  Dated:  June 11, 2015

19

20  _____

DALE A. DROZD

21  UNITED STATES MAGISTRATE JUDGE

22  DAD:6
Ddad1\orders.pro se\petrash1520.msj.f&rs.docx

23

24

25

26

27

28

23